IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAACO FRANCHISING, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 11-3087 |
| | : | |
| JAMES M. GAARDER., et al. | : | |

**MEMORANDUM**

Ludwig, J.                                                    March 21, 2014

This is an action for injunctive relief, money damages and other relief arising from a failed franchise relationship. On March 11, 2011, plaintiff Maaco Franchising, Inc. filed a complaint alleging pre-termination and ongoing breach of a written franchise agreement by defendants James A. Gaarder and MCC Humble Auto Paint, Inc. (doc. no. 1). On May 23, 2011, plaintiff filed a motion for preliminary injunction (doc. no. 4). On June 7, 2011, immediately prior to a scheduled telephone conference, defendant MCC Humble gave notice that it had filed a bankruptcy petition under Chapter 11 in the Houston Bankruptcy Court. Over the next 18 months, the case remained in civil suspense as first defendant MCC Humble, then individual defendant Gaarder, serially filed a total of five unsuccessful petitions in bankruptcy. On January 4, 2013 the case was removed from civil suspense. Defendants were ordered to answer plaintiff's complaint by January 25, 2013. No answer was filed and on January 28, 2013, a default was entered. Following entry of default, defendants retained counsel who filed a motion to open the default. The motion will be denied.

Also pending is plaintiff's motion for preliminary injunction, to which defendants have filed an opposition. The motion for will be denied without prejudice and injunctive relief, if appropriate, will be awarded following the presentation of evidence at an assessment of damages hearing to be scheduled promptly.

**Facts**

Maaco is engaged in the business of franchising Maaco Auto Painting & Bodyworks Centers, which specialize in motor vehicle painting and body repair and other automotive products and services. Complaint, ¶ 7. Maaco regularly enters nto franchise agreements granting franchisees the right to use trade names, service marks and trademarks owned by Maaco and to operate under the Maaco proprietary business system, which includes, inter alia, specially designed buildings with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, advertising and marketing materials, management programs, standards, specification, proprietary marks and information (collectively, the "Maaco System"). *Id.*, ¶ 8.

The Maaco System is at the heart of the Maaco businesss model. It is valuable because it is not available outside the network of Maaco fanchisees. *Id.*, ¶¶13-14, 22-23. To prevent unauthorized use of the system or disclosure of confidential, proprietary information, Maaco conditions the grant of any franchise on the franchisee's covenants not to compete, both during and for a period following termination of the franchise agreement. Complaint, ¶¶ 9-10.

On July 18, 2006, Maaco's predecessor in interest, Maaco Enterprises, Inc., and defendant Gaarder entered into a Franchise Agreement under which Gaarder was granted the right and undertook the obligation to operate a Maaco Auto Painting and Bodyworks Center at 1770 First Street, Humble Texas. *Id.*, ¶ 15; Exhibit A to complaint. On that same day, Gaarder assigned his rights and obligations under the Franchise Agreement to defendant MCC Humble Auto Paint, Inc. under an Assignment and Assumption Agreement. Complaint, ¶ 16; Exhibit B to complaint. Under the Assignment, Gaarder transferred his rights in the Franchise Agreement to MCC Humble and MCC Humble assumed Gaarder's obligations under the agreement. Gaarder, however, agreed to continue to be bound by the provisions of the Franchise Agreement and agreed to guarantee all of MCC Humble's obligations under the agreement. Complaint, ¶ 17. The Franchise Agreement required, among other things, that defendants (1) pay to Maaco a weekly royalty fee equal to a percentage of the gross receipts generated by the center; (2) submit weekly reports to Maaco of gross receipts generated by the center; ad (3) contribute to an advertising fund. *Id.*, ¶ 21; Exhibit A to complaint, ¶¶ 4-5, 11. Defendants were also required to pay for paint and supplies purchased from Maaco. Default triggered Maaco's right to terminate the agreement upon notice and an opportunity to cure. Complaint, ¶¶ 21-39; Exhibit A to complaint, ¶ 14.

The Franchise Agreement included in-term and post-term covenants. These included a covenant of confidentiality, including a specific agreement to

keep Maaco's Confidential Operating manual and other materials secret. Upon termination of the Franchise Agreement, defendants were obligated to return all Maaco materials related to operation of defendants' center. Complaint, ¶¶ 22-23, 41; Exhibit A to complaint, ¶¶ , 10, 15, 17.

During the fifteen-year term of the Franchise Agreement, defendants failed to make required payments. Complaint, ¶ 30. On June 17, 2010, by Notice of Default of Franchise Agreement, Maaco advised defendants that they were in default of their obligations under the agreement, and were required to cure the defaults within 15 days. *Id.*, ¶ 31, Exhibit D to complaint. Maaco attempted to work with defendants to resolve the defaults, however, these efforts proved unsuccessful, as defendant failed to become and remain current in their submission of weekly gross receipts and payment of royalty and advertising fees. Complaint, 32-36. As a result, on January 13, 2011, a second Notice of Default was sent. Exhibit F to complaint. Defendants did not cure their defaults and on March 11, 2011, by Notice of Termination of Franchise Agreement, Maaco advised defendants that the Franchise Agreement was being terminated immediately. Complaint, ¶¶ 37, 39; Exhibit G to complaint.

Termination of the agreement triggered post termination covenants including, *inter alia,* duties to cease to operate the Maaco center, to cease using the Maaco System and all Maaco marks, to pay all sums due under the Franchise Agreement, and to return all Maaco materials. Complaint, ¶ 41; Exhibit A to complaint, 15. Notwithstanding these duties, following termination

4

of the franchise, defendants continued to operate their Maaco center and use the Maaco System and Maaco marks. Complaint, ¶ 43.

On May 11, 2011, Maaco filed this action seeking to enforce termination of the Franchise Agreement, to collect amounts due under the agreement, and to enjoin defendants from operating a motor vehicle painting or body repair business in violation of the Lanham Act and the Franchise Agreement's post-termination covenants.

**Procedural History**

On May 11, 2011, Maaco filed it complaint in this matter, and on May 23, 2011, filed its motion for preliminary injunction. On May 24, 2011, the summons, complaint and motion for preliminary injunction were served on defendants. Doc. nos. 5 and 6. On June 3, 2011, a Notice of Hearing was issued, scheduling a conference on June 7, 2011. Doc. no. 7.

On June 7, 2011, immediately prior to the conference, defendant MCC Humble filed its first corporate bankruptcy under Chapter 11 in the Houston Bankruptcy Court at No. 11-34994-H3-11. As a result, the case was placed in suspense pending resolution of the bankruptcy. Doc. no. 9. On May 3, 2012, MCC Humble's first bankruptcy was dismissed when no plan was filed as required under the Bankruptcy Code. Doc. no. 19, Exhibit A. In the interim, on December 31, 2011, defendant Gaarder filed his first personal bankruptcy in the Houston Bankruptcy Court at No. 11-41024. Doc. no. 19. On February 15, 2012, Gaarder's first personal bankruptcy was dismissed when he did not file all

required statements and schedules within the time permitted. *Id.*

The parties were ordered to provide a status report by April 6, 2012. Doc. no. 15. On April 3, 2012, Gaarder filed a second personal bankruptcy under Chapter 7 in the Houston Bankruptcy Court at No. 12-32596. *Id.* On May 21, 2012, Gaarder's second personal bankruptcy was dismissed for deficiencies under Section 521(i) of the Bankruptcy Code. *Id.*, Exhibit B.

On May 29, 2012, MCC Humble filed a second corporate bankruptcy under Chapter 11 in the Houston Bankruptcy Court at No. 12-33907. Maaco posited that the filing did not, however, trigger protection of the automatic stay because, under 11 U.S.C. 362(n)(1)(B), the filing of a bankruptcy petition operates as an automatic stay unless "the debtor was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition." With no apparent stay pending, a conference was scheduled for August 14, 2012.[1] Doc. no 21.

On the morning of August 12, 2012, defendant Gaarder filed his third personal bankruptcy, a Chapter 13 case, in the Houston Bankruptcy Court at No. 12-36120. That case was dismissed on October 12, 2012 pursuant to Section 521(i) of the Bankruptcy Code when Gaarder failed to file the schedules and plans required under the Bankruptcy Code. Doc. no. 26.

---

1 The parties were directed to request a determination of this issue from the Bankruptcy Court. Doc. no. 24. On March 29, 2013, MCC Humble's second Chpater 11 filing was dismissed when it failed to submit a plan or schedules in that case.

On November 9, 2012, the issue whether MCC Humble's second bankruptcy filing resulted in an automatic stay was resolved when the Houston Bankruptcy Court issued a memorandum opinion and judgment holding that no automatic stay was in effect. Doc. no. 26. Again, with no stay pending, a conference was scheduled to take place on January 8, 2013. On January 4, 2013, in advance of the conference, the case was removed from civil suspense. Doc. nos. 27, 28.

Following the January 8, 2013 telephonic conference, attended by counsel for Maaco and defendant Gaarder (an officer of MCC Humble), an order was entered: "By January 25, 2013, defendants shall answer plaintiff's complaint and respond to plaintiff's motion for preliminary injunction." Doc. no. 29. When, by January 28, 2013, no answer had been filed, plaintiff moved for default, which the Clerk entered on that date. Doc. no. 30.

A telephonic conference was held on February 7, 2013, attended by counsel for Maaco and defendant Gaarder. Defendants were advised that a default had been entered and that absent an opening of the default, they would not be permitted to defend plaintiff's litigation. Notwithstanding the entry of a default, on February 12, 2013, defendants, through recently retained counsel, filed an answer to the complaint with a counterclaim, doc, no. 31.[2] On February 20, 2013, defendants filed a motion to open the default.

---

2 The answer and counterclaim are the subject of "Plaintiff Maaco Franchising, Inc.'s Motion to Strike and/or Dismiss Defendants' Answer, Affirmative Defenses and Counterclaim" (doc. no. 36). That motion, to which no opposition was filed, will be granted.

7

**Standard of Review and Analysis – Motion to Open Default**

Under Rule 55(c), a district court may set aside an entry of default for good cause shown. Whether to set aside an entry of default is within the sound discretion of the district court. The court must consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense, that is, whether the defendant's allegations, if established at trial, would constitute a complete defense to the action; and (3) whether the default was the result of defendant's culpable conduct." *Dambach v. United States*, 211 Fed. App'x 105, 109 (3d Cir. 2006), citing *$55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). The Third Circuit "does not favor entry of defaults or default judgments [and] doubtful cases should be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits." *$55,518.05 in U.S. Currency*, at 194-95.

"The threshold issue in opening a default judgment is whether a meritorious defense has been asserted." *Hritz v. Woma*, 732 F.2d 1178, 1181 (3d Cir. 1984). With respect to the proposed defense – defendants assert in their answer and counterclaim that plaintiff violated the Franchise Agreement in various regards including failure to provide adequate training at the inception of the relationship and ongoing failure to support defendants efforts to succeed, which resulted in the franchise failing. Answer, doc. no31. Defendants posit that as a result of plaintiff's conduct, they were no longer required to abide by the terms of the Franchise Agreement – that they were entitled to some form of

8

self-help recission. Plaintiff counters that five years passed between the alleged failure to train prior to defendants' opening of their franchise and defendants' cessation of payments required under the Franchise Agreement, and notes that defendants continued to operate the Maaco franchise for at least a year after they ceased payment.[3]

"Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." *S&R Corp. v. Jiffy Lube*, 968 F.2d 371, 376 (3d Cir. 1992). Therefore, even if defendants were to prove a breach by plaintiff, they cannot excuse their admitted continued operation of the Maaco franchise without the payment of required fees. As a result, the proffered defense is not meritorious. *Accu-Weather, Inc. v. Reuters Limited*, 779 F.Supp. 801, 803 (M.D. Pa. 1991)(a meritorious defense is one which, if proven at trial, will bar plaintiff's recovery).

---

3 As noted, according to the complaint, defendants were first served with a Notice of Default of Franchise Agreement on June 17, 2010. Complaint, ¶¶ 30-31. Defendants admit that they continued to operate the Maaco franchise until at least August, 2011. Declaration of James Gaarder, ¶ 14. After that time, defendants continued in the same business, in the same location, under the name McC Collision. *Id.*, ¶ 15. That business continues to operate to this day. *Id.*, ¶¶ 18-19. The operation of McC Collision, according to plaintiff, violates the restrictive covenant included in the Franchise Agreement. *See* Exhibit A to complaint, 17(c):

Franchisee covenants that for a period of one (1) year from whichever of the following events occur later: (i) the expiration or termination of this Agreement, regardless of the cause of the termination; (ii) the date upon which Franchisee ceases to operate the business franchised hereunder following the termination of this Agreement; or (iii) the date upon which Franchisee complies with this Paragraph 17.C, Franchisee shall not either directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation:

* * *

(3) Own maintain, engage in, be employed by, finance, or have any interest in any business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises of the Center or within a ten (10) mile radius of the Center or within a ten (10) mile radius of any existing or proposed Maaco location.

With respect to whether the defendants' conduct was culpable, "[d]efendants suggest that being broke should not constitute culpable conduct." Defendants' memorandum at 4. This argument rings hollow. First, as noted above, defendants sought protection of the bankruptcy court five times. This suggests that they were experiencing financial difficulty, but their conduct following the filing of the bankruptcies – failing to prosecute the bankruptcies to conclusion, providing financial disclosures to the court and their creditors and otherwise completing all requirements to obtain a discharge – suggest that the bankruptcies were filed for a purpose other than obtaining the relief from their financial difficulties – namely, delaying this action so that they could continue to operate their auto repair business.

Even if the defendants were in dire financial straits, *see* motion to open default, ¶ 4, this does not excuse the failure to file an answer to the complaint when ordered to do so. With respect to individual defendant Gaarder, nothing prevented him from filing a *pro se* answer to the complaint before the deadline imposed by the court. He was not, as defendants' motion maintains, required to retain counsel to do so. Additionally, the speed with which Gaarder was able to obtain funds from his parents with which to retain counsel AFTER a default was entered calls into question the failure to request the funds once the order requiring a prompt answer was filed. Defendants' argument that they did not understand the exigency of the matter until a default was entered is equally suspect.

10

Default was entered in this case because defendants apparently did not believe a court order requiring the filing of an answer was to be taken seriously and obeyed. The long delay leading up to the order requiring prompt filing of an answer was attributable solely to defendants' questionable conduct in bankruptcy court. Defendants' conduct has been, at best, dilatory and characterized by deliberation rather than negligence. Based on the record, it appears that defendants' efforts to delay prosecution of plaintiff's claims can reasonably be characterized as both willful and in bad faith, and, as a result, culpable. *See Hritz*, 732 F.2d at 1182.

With respect to prejudice – "where the setting aside of the entry of default results in the loss of relevant evidence or some other occurrence that tends to impair the plaintiff's ability to pursue the claim," prejudice will be found. *Ksure of New York Corp. v. Raineater, LLC*, 2103 WL 4400168, at *2 (E.D. Pa., Aug. 15, 2013). However, "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early stage of the proceedings." *Id.* (citations omitted). Defendants note that they moved to set aside the default within two weeks after its entry by the Clerk, and that such a brief delay could not result in loss of evidence or other obstacles to plaintiff's ability to pursue its claim. They further argue that the brief delay, coming many months after the filing of the complaint, should not prejudice plaintiff. Defendants' position ignores the nearly two years of delay that occurred prior of the default – delay attributable to defendants' five

11

unsuccessful bankruptcy filings. *See supra.*

As to prejudice, Maaco points to years of delay in recovering unpaid fees due under the Franchise Agreement[4], thousands of dollars in attorneys' fees already spent in this case and in the Houston Bankruptcy Court, and further expense if the case is permitted to proceed. Further, opening the default and proceeding to litigate the breach of contract claim and Maaco's request for injunctive relief now would further delay relief to Maaco and permit defendants to continue to ignore their obligations and covenants under the Franchise Agreement – most significantly the operation of a competing business. Defendants readily admit that they are not paying franchise fees as required under the agreement, and that they have been continuously operating a competing location notwithstanding the post-termination requirements of the Franchise Agreement.

The prejudice plaintiffs describe is not the type that will typically support a finding of prejudice sufficient to deny a request to open a default. However, given that defendants have not presented a potentially meritorious defense, and have,

---

4  Plaintiff calculates this amount to be $84,709.17 and requests that defendants be required to post a bond in this amount if the default is opened. *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514-16 (2d Cir. 2001) (district court has inherent authority to impose a bond as condition of setting aside a default).

based on the record, engaged in willful conduct aimed at delaying these proceedings, a stronger showing of prejudice by plaintiff should not be required. Defendants' motion to open the default is denied.

An order accompanies this memorandum.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.